FILED & JUDGMENT ENTERED
Steven T. Salata

Apr 20 2012

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

In re:                          )
                                )   Case No. 10-33732
**GERALD LOUIS MILLS**          )   Chapter 13
**BEVERLY DIANNE MILLS,**       )
                                )
                Debtors.        )
_____)

## ORDER

This matter is before the court on (1) the Debtors' Motion to Sell Real Estate Free and Clear of Liens and to Amend Schedules (the "Motion to Sell") and the response and supplemental response thereto of Shae S. Mills; (2) the Debtors' Motion to Amend Attachments to Pending Motion (the "Motion to Amend"); and (3) the Motion by Shae Mills for Relief from Judgment (the "Motion for Relief") and the response thereto of the law firm of Caldwell, Helder, Helms and Robinson, PA ("Caldwell Helder"). The key issue to be determined by the court is the distribution of the proceeds of the sale of two pieces of real property owned by the male Debtor. As part of

that determination, the court must consider whether the Debtors can avoid the judicial lien of the male Debtor's ex-spouse, Shae Mills, pursuant to 11 U.S.C. § 522(f), as impairing his homestead exemption. Based on its review of the pleadings and the arguments of counsel and for the reasons stated below, the court grants in part and denies in part the Debtors' Motion to Sell; grants the Debtors' Motion to Amend; and grants the Motion for Relief of Shae Mills.

## Factual Background and Procedural History

1.   Shae and Gerald Mills were married on January 1, 1983. While married, the Mills owned a 7-acre tract of land (the "Homeplace Tract") and a 36-acre tract of land (the "Unimproved Tract") (collectively, the "Property") as tenants by the entirety. On August 15, 1998, the Mills executed a note in favor of SunTrust Bank that was secured by a deed of trust on the Property.

2.   Shae and Gerald Mills separated on September 20, 2003. Gerald Mills filed for equitable distribution of their marital assets on October 24, 2006, and obtained a divorce from Shae Mills on April 5, 2007. Gerald Mills subsequently married Beverly Mills.

3.   The district court for Union County, North Carolina, entered an Equitable Distribution Judgment on June 16, 2009, that, in pertinent part, provided as follows: (1) Shae Mills

was instructed to convey her interest in the Property to Gerald Mills; (2) Gerald Mills was distributed all debts secured by the deed of trust on the Property; (3) Shae Mills was awarded a judgment against Gerald Mills in the amount of $241,166.00; and (4) Shae Mills was awarded an additional judgment against Gerald Mills in the amount of $5,184.00 for a portion of the retirement benefits paid to Gerald Mills after the parties separated.

4. On June 19, 2009, Shae Mills delivered to Gerald Mills the quitclaim deed for the Property, which was recorded in the office of the Register of Deeds for Union County on June 22, 2009. Gerald Mills has not paid Shae Mills the $241,166.00 or any amount of his retirement benefits as required by the Equitable Distribution Judgment.

5. On December 17, 2010, Beverly and Gerald Mills (the "Debtors") filed a Voluntary Petition for relief under Chapter 13 of the Bankruptcy Code. On the same day, the Debtors filed a Chapter 13 Plan that provided for the surrender of the Property. The Plan did not provide for the avoidance of any judicial liens nor did the male debtor claim a homestead exemption in the residence on Schedule C.

6. Along with their Voluntary Petition, the Debtors filed Schedule D, which listed the secured claims of Shae Mills, SunTrust, and Union County. In addition, Schedule D listed Rebecca Robison as having a secured claim in the amount of

$18,853.00 without indicating the date the claim was incurred or the nature of the lien.

7.    On February 4, 2011, the Debtors filed an amended Schedule D, increasing the value of the property subject to the lien of the secured creditors.    And on August 19, 2011, the Debtors filed the Motion to Sell in which they sought to amend Schedule D to include the judgment of Stephen L. Gragg in the amount of $15,331.27.    The August 19 amendment to Schedule D did not include the claim of Rebecca Robison nor did it include any details about the claim of Stephen L. Gragg.    Finally, in their Motion to Amend, the Debtors filed an Amended page two of Schedule D in which they added the secured claim of Rebecca Robison-this time in the amount of $13,803.90.    The Debtors' Amended Schedule D also indicated that the secured claim of Ms. Robison was a second deed of trust on the Unimproved Tract for attorneys' fees incurred in the equitable distribution trial.[1]

8.    Shae Mills timely filed a proof of claim in the amount of $299,912.81 based upon the judgments in her favor provided for in the Equitable Distribution Judgment.    These judgments constituted a lien on the property of Gerald Mills.    A portion of the claim ($12,661.00) represents a domestic support

---

[1] Contrary to the Schedule D filed by the debtors and based on a review of the Settlement Statements attached to the Memorandum in Support of Debtors' Request for Homestead Exemption, it appears that the second deed of trust was in favor of Rebecca Robison's law firm, Caldwell Helder Helms & Robison, P.A., rather than in favor of Ms. Robison.

obligation that arose upon the failure of Gerald Mills to pay post-separation support.

9.    On August 19, 2011, the Debtors filed the Motion to Sell in which they sought the following relief:  (1) to be allowed to amend their Chapter 13 Plan to provide for the sale of the Property for the gross sales price of $275,000.00; (2) for an order allowing the sale of the Property; (3) to avoid the liens set forth on the Exhibit A attached to the Motion to Sell; and (4) to allow the amendments reflected on the amended schedules attached to the Motion to Sell.

10.    The Debtors subsequently filed the Motion to Amend in which they seek to substitute the attachments to the Motion to Amend for the attachments to the Motion to Sell.  The attachments to the Motion to Amend include the following: an Amended Exhibit A, an Amended Summary of Schedules, an Amended Official Form 6, an Amended Schedule A, and the above-referenced Amended Schedule D.[2]

11. On September 16, 2011, this court entered an Order Allowing Sale of Real Estate Free and Clear of Judgment Liens (the "Order Allowing Sale").  The court found that the Chapter 13 Trustee and other parties present at the September 13, 2011,

---

[2]  The Motion to Amend did not include the proposed amended Schedule C that was attached to the Motion to Sell.  Accordingly, the court will address the amendment of Schedule C as part of the Motion to Sell and separately consider the debtors' Motion to Amend and the amendment of the schedules attached thereto.

hearing on the Motion to Sell had reached agreement that the Plan should be amended to provide for the sale of the Property and that the remaining issues in the Debtors' Motion to Sell should be reserved for hearing at a later date. More specifically, the Order Allowing Sale ordered the following:

> [T]hat the Chapter 13 Plan of the Debtors herein be and hereby is AMENDED as requested; however, sale of the real estate involved shall be free and clear of all judgment liens with said liens attaching to the net proceeds of sale after payment of closing costs, real property taxes and both outstanding deeds of trust.

See In re Mills, No. 10-33732 (Bankr. W.D.N.C. Sept. 16, 2011). The Order Allowing Sale provided that the net proceeds of sale should be delivered to the Chapter 13 Trustee, who continues to hold those proceeds in trust.

12. The attorney for the Debtors, the attorney for Shae Mills, and the Chapter 13 Trustee were present at the September 13, 2011, hearing on the Debtors' Motion to Sell. At that hearing, the attorney for the Debtors represented to the court that the parties had agreed to the entry of the Order Allowing Sale and to allow the closing attorney to pay closing costs, real property taxes, and both deeds of trust. There was not any discussion at the hearing or in the Order Allowing Sale about the priority of the deeds of trust to be paid at closing relative to the judicial liens on the property. Neither Rebecca Robison nor her attorney or any other representative from

6

Caldwell Helder was present at the September 13, 2011, hearing on the Debtors' Motion to Sell despite having received notice of the same.

13.   The closing on the sale of the Property took place on October 13, 2011.  The gross sales price for the Homestead Tract was $150,000.00, and the gross sales price for the Unimproved Tract was $125,000.00.  Pursuant to the Order Allowing Sale, the closing attorney paid in full the first deed of trust of SunTrust Bank, the second deed of trust in favor of Caldwell Helder, and the costs of closing, leaving net proceeds in the amount of $66,699.01.

14.   In their Memorandum in Support of Debtors' Request for Homestead Exemption, the Debtors explained the manner in which the closing was conducted as follows:

> [C]ounsel for Debtor had two separate contracts of
> sale and two separate closings, first the unimproved
> tract and then sale of the homestead.  The liens and
> expenses encumbering both tracts were then apportioned
> between the two tracts based on the percentage the
> sale price of each tract bore to the Gross sales price
> of both tracts combined.

See Memorandum in Support of Debtors' Request for Homestead Exemption at 2, In re Mills, No. 10-33732 (Bankr. W.D.N.C. Dec. 20, 2011).

## Issues

15.   Following the entry of the Order Allowing Sale and the October 13, 2011, closing, the matters remaining to be heard by

the court were the Debtors' Motion to Amend; the Motion for Relief of Shae Mills; and the unresolved issues in the Debtors' Motion to Sell. Those unresolved issues include the following: (1) whether the Debtors can amend their Schedule C in order to claim a homestead exemption in the amount of $28,898.30[3] and (2) whether the Debtors can avoid the judicial lien of Shae Mills pursuant to 11 U.S.C. § 522(f) as impairing the male debtor's homestead exemption. The court will address the outstanding issues in that order.

## Conclusions of Law

16. In their Motion to Amend, the Debtors seek to amend the Exhibit A attached to the Motion to Sell, the Summary of Schedules, Official Form 6, and Schedule A. Exhibit A is simply a table in which the Debtors calculate the distribution of the closing proceeds consistent with their Motion to Sell. Because Exhibit A is a table used only for a demonstrative purpose, the Debtors do not need a court order to file it. With respect to the amended schedules, pursuant to Fed. R. Bankr. P. 1009(a), the Debtors have the right to amend those schedules as a matter of course at any time until the case is closed. In addition,

---

[3] The court notes that in the body of the Motion to Sell, the debtors seek to amend Schedule C so the male debtor can claim a homestead exemption in the amount of $30,898.30, whereas in the Schedule C attached to the Motion to Sell, the male debtor claims a homestead exemption in the amount of $28,898.30. The court was unable to reconcile these numbers. Because of the ultimate disposition of this matter, however, the court believes that reconciling these figures is unnecessary for the purposes of this Order.

the court notes that no objections were filed in response to the Debtors' Motion to Amend or argued at the hearing on this matter. Accordingly, the court **GRANTS** the Debtors' Motion to Amend.

17. In her Motion for Relief, Shae Mills asserts that, pursuant to the provisions of Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60, she should be granted relief from the court's September 16, 2011, Order Allowing Sale to the extent the order gives priority of payment to the note held by Caldwell Helder over her judgment lien. More specifically, Ms. Mills argues that the judgment she obtained against Gerald Mills was docketed prior to the recordation of the deed of trust that secured the note held by Caldwell Helder. Therefore, according to Ms. Mills, the court was "probably" misinformed about the priority of the Caldwell Helder deed of trust when it approved entry of the Order Allowing Sale at the hearing on September 13, 2011.

18. The September 16, 2011, Order Allowing Sale was an interlocutory order entered during the pendency of this bankruptcy proceeding. Consequently, the disposition of Ms. Mills' Motion for Relief is not subject to the procedure outlined in Rule 60(b) for modification of final judgments and orders. See In re MMS Builders, Inc., 101 B.R. 426, 430 (D.N.J. 1989). Moreover, "it is well settled that a federal court which enters an interlocutory order has the inherent power to

reconsider or revise the order in the interest of justice." <u>See
id.</u>

19.  At the September 13, 2011, hearing at which the
attorney for the Debtors announced that the parties had agreed
to the entry of the Order Allowing Sale, passing reference was
made to two deeds of trust being paid at closing, but there was
no discussion regarding who the mortgagee was on those deeds of
trust or the priority of the deeds of trust relative to Shae
Mills' judicial liens.  However, in the Amended Exhibit A
attached to the Debtors' Motion to Amend, the Debtors list the
judgment liens of Shae Mills as having priority over the second
lien deed of trust in favor of Rebecca Robison (Caldwell
Helder).  In fact, there appears to be no dispute that the
judgment lien of Shae Mills has priority over the deed of trust
of Caldwell Helder.  Accordingly, the court finds that the deed
of trust of Caldwell Helder was improperly paid at the October
13, 2011, closing ahead of the judgment lien of Shae Mills.
Thus, in the interest of justice, the court **GRANTS** the Motion
for Relief of Shae Mills; finds that the Order Allowing Sale
should be set aside to the extent it provided for the payment of
the Caldwell Helder deed of trust; and orders Caldwell Helder to
disgorge to the Chapter 13 Trustee the amount of $13,803.90,
which represents the funds it was paid at closing.

Case 10-33732  Doc 56  Filed 04/20/12  Entered 04/20/12 08:56:15  Desc Main
Document  Page 11 of 23

20.  Next, the court will consider the unresolved issues from the Debtors' Motion to Sell, including whether the Debtors can amend Schedule C in order for the male debtor to claim a homestead exemption in the amount of $28,898.30 and whether the Debtors can avoid the judicial lien of Shae Mills pursuant to 11 U.S.C. § 522(f) as impairing the male debtor's homestead exemption.

21.  When the Debtors originally filed their Schedule C, the male debtor did not claim a homestead exemption in their primary residence because they planned to surrender the residence.  However, as the case developed, the Debtors received an offer to purchase the Property and obtained court approval to sell the Property.  Accordingly, they subsequently moved to amend their Schedule C to claim a homestead exemption in their primary residence pursuant to N.C.GEN.STAT. § 1C-1601(a)(1).  Shae Mills objects to the Debtors' amendment of their Schedule C so the male debtor can claim the homestead exemption.

22.  As noted above, pursuant to Fed. R. Bankr. P. 1009(a), the Debtors have the right to amend their schedules as a matter of course at any time until the case is closed.[4]  As observed by the Bankruptcy Court in Maryland, "[t]his rule is a permissive one, with amendment disallowed in limited instances of bad faith

---

[4] Pursuant to the court's Local Rule 4003-1, any amendments to exemption elections made after the § 341(a) meeting of creditors, except those dealing with after-acquired property, shall be by motion and notice pursuant to Local Rule 9013-1.

by the debtor or where there is prejudice to creditors." See In re Butcher, 189 B.R. 357, 374 (Bankr. D. Md. 1995); see also In re Yonikus, 996 F.2d 866, 871-72 (7th Cir. 1993) (holding that fraudulent concealment of an asset was clear and convincing evidence of the debtor's bad faith and a proper basis for denying the debtor's claim of exemption in that asset.)   In addition, pursuant to Bankruptcy Rule 4003(c), the party objecting to a claim of exemption has the burden of proving that the exemption is not properly claimed.

23.   Ms. Mills has not introduced any evidence to support a finding of bad faith by the Debtors or prejudice to creditors or otherwise met her burden of proving that the male debtor has not properly claimed the homestead exemption.   In fact, in her response to the Debtors' Motion to Sell, Ms. Mills indicated that she supported the sale of the Property because she believed it would provide funds in excess of what would be realized upon a foreclosure.   The ultimate realization of less proceeds from the sale of the Property by Ms. Mills due to the male debtor claiming the homestead exemption does not result in the type of prejudice to her that would prevent the male debtor from claiming an exemption in the homestead.   See In re Henry-Chandler, 2006 WL 4547188, *4 (Bankr. D. Md. 2006).   Otherwise, all exemptions would be barred as prejudicial.   Therefore, the court finds that the Motion to Sell should be **GRANTED** to the

12

extent the Debtors seek to amend Schedule C so the male debtor can claim the homestead exemption.

24. Having determined that the Debtors can amend their Schedule C to claim the homestead exemption, the court must consider whether the Debtors can avoid the judicial lien of Shae Mills, pursuant to 11 U.S.C. § 522(f), as impairing the homestead exemption. Section 522(f)(1) provides in pertinent part:

> Notwithstanding any waiver of exemptions . . ., the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is –
>
> (A) a judicial lien . . . .

See 11 U.S.C. § 522(f)(1).

25. In her response to the Debtors' Motion to Sell, Shae Mills argues that, pursuant to the Supreme Court's holding in Farrey v. Sanderfoot, 500 U.S. 291, 299-300 (1991), the Debtors could not avoid the "fixing" of Shae Mills' lien pursuant to § 522(f)(1) because Gerald Mills did not have an interest in the Homeplace Tract prior to the attachment of Ms. Mills' lien. Presumably Ms. Mills makes this argument because the facts in this case are similar to those in the Farrey case in that both cases involved the entry of an order in a state court domestic proceeding which simultaneously awarded the male debtor a fee

simple interest in property while granting a judicial lien to his former wife.

26. While the facts of this case and the Farrey case are similar, there are a few key differences. In Farrey, the Wisconsin state court entered one order that both granted a judgment of divorce and resolved all the contested property issues. More specifically, prior to the divorce judgment, Farrey and her husband held title to the real estate in joint tenancy. The entry of the divorce decree had the following effect:

> [It] extinguished these previous interests. At the same time and in the same transaction . . . the decree created new interests in place of the old: for Sanderfoot, ownership in fee simple of the house and real estate; for Farrey, various assets and a debt of $29,208.44 secured by a lien on Sanderfoot's new fee simple interest.

See Farrey, 500 U.S. at 299. Therefore, given the creation of the new interests in place of the old, the Supreme Court found that, since Sanderfoot never possessed his fee simple interest in the house and real estate before Farrey's lien "fixed," the Debtor could not avoid the lien pursuant to 11 U.S.C. § 522(f)(1). See id. at 300.

27. In contrast, in the present case, Gerald Mills obtained a divorce from Shae Mills on April 5, 2007. Pursuant to North Carolina law, the divorce decree converted the estate by the entirety into a tenancy in common, thereby giving Mr.

14

Mills a one-half undivided interest in the Homeplace Tract and the Unimproved Tract. See Walters v. Pittman, 254 N.C. 191, 193, 118 S.E.2d 395, 397 (1961). It was not until two years later, on June 16, 2009, that the district court for Union County entered the Equitable Distribution Judgment pursuant to which Ms. Mills conveyed her remaining one-half interest in the Property to Gerald Mills and received a judgment lien against the Property. Ms. Mills subsequently delivered the quitclaim deed to the Property to Gerald Mills on June 19, 2009, and the deed was recorded in the office of the Register of Deeds on June 22, 2009.

28. Because the divorce decree was entered prior to the entry of the Equitable Distribution Judgment, Gerald Mills owned a one-half undivided interest in the Homeplace Tract at the time the state court granted Ms. Mills a lien on the Homeplace Tract. Accordingly, pursuant to the Supreme Court's holding in Farrey, Mr. Mills can avoid the fixing of Shae Mills' judgment lien on the one-half undivided interest in the Homeplace Tract he obtained upon entry of the divorce decree on April 5, 2007, because the Debtor had the property interest to which the lien attached before the lien attached to that interest.

29. The holding in Farrey does apply, however, to prevent Gerald Mills from avoiding the lien of Ms. Mills on the remaining one-half interest in the Homeplace Tract that was

transferred to him after the creation of the judgment lien in her favor pursuant to the Equitable Distribution Judgment.  Just as in _Farrey_, because Mr. Mills did not possess that new fee simple interest before Ms. Mills' lien fixed, § 522(f)(1) cannot be used to void the lien on Mr. Mills' new one-half interest in the Homeplace Tract.

30.  In sum, the court finds that pursuant to the Supreme Court's holding in _Farrey_, the Debtors can avoid the fixing of Shae Mills' judgment lien on the one-half undivided interest in the Homeplace Tract that Mr. Mills obtained upon entry of the divorce decree because the Debtor had the property interest to which the lien attached before the lien attached to that interest.  However, the Debtors may not use § 522(f)(1) to avoid the lien of Ms. Mills on the remaining one-half interest in the Homeplace Tract that was transferred to Mr. Mills simultaneously with the creation of the judgment lien because Mr. Mills did not possess that new interest before Ms. Mills' lien fixed.

31.  Having found that the Debtors can avoid Ms. Mills' lien on only one-half of the Debtor's interest in the Homeplace Tract, the court must determine how to distribute the net proceeds from the sale of the Property after satisfying all closing costs, real property taxes, and the outstanding deed of trust of SunTrust Bank.  As a starting point, the court will use the Amended Exhibit A attached to the Debtors' Motion to Amend

to analyze the distribution of the net proceeds from the sale of the Property because it is consistent with the manner in which the closing was conducted.[5]

32. Ms. Mills disputes the manner in which the proceeds of sale were distributed at closing, particularly with respect to the payment of SunTrust Bank. Specifically, Ms. Mills contends that the proceeds from the sale of the Homeplace Tract should have been exhausted before applying the proceeds from the sale of the Unimproved Tract to the outstanding indebtedness of SunTrust Bank. Counsel for the Debtors explained the rationale for the way in which the closings were conducted as follows:

> Because the Note and Deed of Trust in the first position in favor of SunTrust Bank . . . originated contemporaneously and became a lien on both tracts of real estate simultaneously, Debtor's [sic] counsel thought that it would be unfair to the Creditors to first exhaust all proceeds from sale of the non-homestead tract in payment of [SunTrust Bank] before applying funds from sale of the homestead tract to this debt. Likewise, it would be unfair to Debtor [sic] to reverse the order of payment and apply all proceeds from sale of the homestead before applying funds from sale of the unimproved tract.

See Memorandum in Support of Debtors' Request for Homestead Exemption at 2, In re Mills, No. 10-33732 (Bankr. W.D.N.C. Dec. 20, 2011).

---

[5] The figures on the Amended Exhibit A are slightly different than the corresponding figures on the Settlement Statements attached to the debtors' Memorandum in Support of Debtors' Request for Homestead Exemption. The court was unable to reconcile those differences, so, for ease of reference, the court will refer to the figures in the Amended Exhibit A and will rely on the parties to use the principles of this Order to determine the exact amount of each party's award.

33.  Ms. Mills cites no cases to support her position that the closings should have been handled differently, nor is the court aware of any.  Moreover, Ms. Mills consented to the entry of the Order Allowing Sale on September 16, 2011, and the closing on the sale of the Property was completed on October 13, 2011, pursuant to the terms of that Order.  The appropriate time for Ms. Mills to express her opinion regarding the manner in which the closings were to be conducted and the proceeds distributed was before the closing occurred.  Finally, the court believes that the closings were conducted in a manner that was the most fair and equitable to both the Debtors and Ms. Mills.

34.  The outstanding liens remaining to be paid from the net proceeds from the sale of the Property in the amount of $80,051.24 ($66,699.01 + $13,803.90 disgorged from Caldwell Helder) include, in order of priority, the following:  (1) the judgment of Stephen L. Gragg in the amount of $15,331.27, which is a judgment lien against the Unimproved Tract and the Homeplace Tract; (2) the lien of Shae Mills in the amount of $299,912.81 against both tracts of the Property, $12,661.00 of which represents a domestic support obligation; and (3) a second lien deed of trust in favor of Caldwell Helder on the Unimproved Tract in the amount of $13,803.90.

35.  In their Amended Exhibit A, for purposes of payment, the Debtors prorate the liens of Stephen L. Gragg and Shae Mills

between the Unimproved Tract and the Homeplace Tract. The Debtors offer no basis for arbitrarily prorating the liens in this manner other than the bald assertion that it is the most equitable way to do it. Although it may be more beneficial to the Debtors to prorate the liens between the Unimproved Tract and the Homeplace Tract, distributing the proceeds in that manner would be detrimental to these judgment lien creditors who are entitled to have their liens paid in a way that maximizes the distribution of sales proceeds to them. Accordingly, the court will begin by calculating the satisfaction of judgment liens from the proceeds of the sale of the Unimproved Tract remaining after payment of closing costs, real property taxes, and the deed of trust in favor of SunTrust Bank and does so as follows:

## Distribution of Proceeds from Sale of the Unimproved Tract

| | | | |
|---|---|---|---|
| *Contract Sales Price* | | $ | *125,000.00* |
| *Closing costs, taxes, SunTrust deed of trust* | − | $ | *88,508.67* |
| *Proceeds of Sale* | | $ | *36,491.33* |
| *Judgment lien Stephen L. Gragg* | − | $ | *15,331.27* |
| *Judgment lien Shae Mills* | − | $ | *299,912.81* |
| | | $ | *(278,752.75)* |

Because there are no proceeds remaining from the sale of the Unimproved Tract after payment of the lien of Stephen Gragg and partial payment of the lien of Shae Mills, the court finds that

Caldwell Helder is left with an unsecured claim in this case in the amount of $13,803.90.

36. With respect to the Homeplace Tract, the only lien against that tract to be paid from the $43,559.91 in proceeds remaining after payment of closing costs, real property taxes, and the deed of trust in favor of SunTrust Bank is the $278,752.75 outstanding on the lien of Shae Mills. The court notes that $12,661.00 of Ms. Mills' lien is for a domestic support obligation and cannot be avoided pursuant to 11 U.S.C. § 522(f)(1)(A).

37. Because the court has determined that Gerald Mills can avoid the fixing of Shae Mills' judgment lien only on the one-half undivided interest in the Homeplace Tract that Mr. Mills obtained upon entry of the divorce decree, the court finds that the lien of Shae Mills can only be avoided on one-half of the $43,559.91 in proceeds. Accordingly, one-half of the proceeds, or $21,779.96, will be paid to Ms. Mills.

38. With respect to the remaining proceeds in the amount of $21,779.96, the court finds that $12,661.00 should be paid to Ms. Mills for her non-avoidable domestic support obligation. Consequently, the male Debtor may claim a homestead exemption in the remaining proceeds in the amount of $9,118.96, and Ms. Mills has an unsecured claim in this case in the amount of $244,311.79

($299,912.81 total lien - $21,160.06 from the Unimproved Tract - $34,440.96 from the Homeplace Tract).[6]

39.   Neither the parties nor the court have located any case law on the avoidance of liens in a case such as this and, in particular, whether to pay the non-avoidable domestic support obligation from the proceeds of the sale of the Unimproved Tract or the Homeplace Tract, which decision ultimately affects the amount of the Debtor's homestead exemption.   In that regard, the court is mindful of the need to protect two strong competing interests:   the policies underlying the enactment of equitable distribution concepts and the policies in favor of protecting a Debtor's homestead exemption.   But, as the Supreme Court noted in <u>Farrey</u>:

> [T]he legislative history suggests that Congress primarily intended § 522(f)(1) as a device to thwart creditors who, sensing an impending bankruptcy, rush to court to obtain a judgment to defeat the debtor's exemptions.   That is not what occurs in a divorce proceeding such as this.   Farrey obtained the lien not to defeat Sanderfoot's pre-existing interest in the homestead but to protect her own pre-existing interest in the homestead that was fully equal to that of her spouse.   The divorce court awarded the lien to secure an obligation the court imposed on the husband in exchange for the court's simultaneous award of the

---

[6] The court is aware of the lien avoidance formula of § 522(f)(2)(A) but believes the formula does not contemplate a factual scenario such as the one in this case where the court has found that the Debtors can avoid a lien on one-half of the male Debtor's interest in one of two tracts of property.   A strict application of the lien avoidance formula without taking into consideration Gerald Mills' ability to avoid Ms. Mills' lien on one-half of his interest in the Homeplace Tract would lead the court to conclude that the Debtors could avoid $251,430.00 of Ms. Mills' lien, leaving the male Debtor with a homestead exemption in the amount of $16,237.16.

> wife's homestead interest to the husband. We agree
> with Judge Posner that to permit a debtor in these
> circumstances to use the code to deprive a spouse of
> this protection would neither follow the language of
> the statute nor serve the main goal it was designed to
> address.

See _Farrey_, 500 U.S. at 300-301.

40. As in _Farrey_, the state court awarded Ms. Mills a judgment against Gerald Mills pursuant to the terms of the Equitable Distribution Judgment to secure an obligation the court imposed on Gerald Mills in exchange for the court's award to him of Ms. Mills' remaining real property interest. Therefore, in its discretion, the court chooses to pay the domestic support obligation from the proceeds from the sale of the Homeplace Tract in recognition of the policy considerations expressed by the Supreme Court in the _Farrey_ case.

41. Thus, for the reasons stated above it is therefore **ORDERED** that:

(1) the Debtors' Motion to Amend is granted;

(2) the Motion for Relief of Shae Mills is granted; and

(3) the Debtors' Motion to Sell is granted in part and denied in part; and

(4) Stephen Gragg shall receive $15,331.27 from the proceeds of the sale of the Unimproved Tract; Shae Mills shall receive $55,601.02 from the proceeds of the sale of the Property and have an unsecured claim in the amount of $244,311.79; and

Gerald Mills shall receive $9,118.96 from the proceeds of the sale of the Homeplace Tract, which he can exempt under his homestead exemption.

**This Order has been signed electronically.**          United States Bankruptcy Court
**The judge's signature and the court's seal**
**appear at the top of the Order.**